[No. E007128. Fourth Dist., Div. Two. Oct. 30, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN EMMETT WEST, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Parts 1 through 3 are not published; they do not meet the standards for publication contained in California Rules of Court, rule 976.1.

**COUNSEL**

Alisa M. Weisman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Rudolf Corona, Jr., and Maxine P. Cutler, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HOLLENHORST, Acting P. J.**—A jury convicted John West of second degree murder (Pen. Code, § 187), during which he used a revolver (Pen. Code, § 12022.5). In bifurcated proceedings, the trial court found he had suffered a previous felony conviction for which he served a prison term. (Pen. Code, § 667.5, subd. (b).) He was sentenced to prison and appeals, claiming the trial court erroneously (1) cut off cross-examination of a prosecution witness, (2) instructed the jury, and (3) made a true finding as to the prior conviction allegation. He also maintains that the prosecutor erroneously argued certain matters to the jury. We reject his contentions, except the third. We therefore reverse the true finding made on the enhancement imposed for the prior and otherwise affirm.

## FACTS

During the late afternoon of April 20, 1988, West and the victim were seen arguing at the apartment of an acquaintance. West said to the victim, "You dug your own grave. Now lay [*sic*] in it." The two men got into the victim's car, but before they departed, West returned to the apartment alone and retrieved a leather pouch from which a gun was protruding. A short time later, witnesses saw the victim driving south on El Cielo Street in Palm Springs with a single passenger. One witness heard two shots go off inside the car. It came to a stop and the victim emerged, bleeding from the stomach area. He went into a nearby intersection and was attempting, unsuccessfully, to get passing cars to stop. The passenger got out of the car, went around it and reentered it, sitting in the driver's seat. When the traffic cleared, the victim turned towards the passenger. From a distance of about 20 feet, the passenger shot the victim. One witness testified the bullet struck the victim somewhere in the chest, the other said it pierced the victim's hand and went into his stomach. The passenger then took off at a high rate of speed down El Cielo.

During a six-person photo showup after the crime, the first witness picked out the pictures of West and another man as the assailant. At trial this witness was unable to identify West as the culprit. The second witness was unable to pick West out of the photo lineup, but identified a photograph of him shown at trial.

A police officer who responded to the scene of the shooting testified that the victim told him he knew he was going to die and identified West as his assailant. He then gave the officer some paperwork that bore West's name.

A short time after the shooting, a postal carrier was driving near Palm Springs, heading in the direction of the apartment from which West had departed earlier with the victim, when he saw the victim's car pull up beside him at a traffic light. After briefly hesitating, the car ran the red light and proceeded down the road. Afterward, the carrier picked West's picture out of the photo lineup, commenting that he was 99 percent sure of his identification. He also identified West at trial as the driver and sole occupant of the car, noting that West's appearance had "changed dramatically" between the time of the crime and trial.

Thirty to forty minutes after leaving the apartment, West was seen returning to it, alone. He told the people there, "You don't know who I am. You never seen [*sic*] me before in your life." West then took off. He was apprehended the following morning at his parents' house in Yucca Valley.

1.-3.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### 4.  *Prior Conviction*

At some point before the verdict was rendered, a motion was made to bifurcate the trial of the murder from the allegation that West had suffered a prior felony conviction for which he served a prison term. (Pen. Code, § 667.5, subd. (b).)[7] Immediately after the verdict was announced, the trial court dismissed the jury without objection by the defense. Defense counsel then stated to the court, "Whatever the Court's pleasure on handling the prior." Both counsel and the court agreed to have the hearing held the following day. On that day, the prosecutor began the proceedings by stating, "I think, preliminarily, we have to have a waiver on the record of the jury trial as to the priors.[8] I don't think that's been done here." Defense counsel agreed, and the court obtained from West his waiver.  ▉  West now contends, on double jeopardy grounds, that the court could not proceed on the prior, having dismissed the jurors before obtaining his waiver of trial by them. We agree.

Only two recent cases on this subject have survived, all others having been depublished. In *People* v. *Hockersmith* (1990) 217 Cal.App.3d 968 [266 Cal.Rptr. 380], a prior was alleged as an enhancement. It was not bifurcated from trial of the charged offense and the defendant did not waive jury trial as to it, the parties, as ours, having erroneously assumed such a waiver had occurred. No evidence was offered as to the prior, although, during sentencing, the court utilized it to deny defendant probation. Division Three of this court rejected the People's argument on appeal that the matter could be remanded and the defendant retried on the prior and accepted defendant's claim that double jeopardy principles barred retrial. In so holding, the court said:

"Jeopardy attaches in criminal cases when a jury is impaneled and sworn to try a case. [Citations.] If a criminal conviction is reversed for insufficiency of the evidence the principles of double jeopardy prevent a retrial. [Citations.] The reason is: ' "The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another

---

*See footnote, *ante,* page 1283.

[7] Although the record does not show that this motion was made and granted, immediately after the verdict was announced the court orally stated that the substantive offense and prior had been bifurcated. Neither counsel disputed this representation.

[8] A second prior allegation was dismissed.

opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials." . . . .' [Citation.] [¶] These basic rules of constitutional law apply in the context of a trial of a prior conviction when insufficient evidence is introduced to sustain the allegation. [¶] Thus, where a defendant is charged, as here, with a prior felony conviction; the jury is impaneled and sworn; defendant does not waive jury trial on the issue; and no evidence is offered to prove the prior conviction; double jeopardy attaches and bars any retrial of the prior felony conviction. [¶] The above principles were correctly applied in *People* v. *Wojahn* (1984) 150 Cal.App.3d 1024 . . . [wherein the court held], '[T]hat when the jury was sworn, it was sworn to try both the issue of guilt of the substantive criminal offense *and* the issue of the truth of the alleged prior conviction. Consequently jeopardy attached to *both* issues. When the trial court improvidently discharged the jury after it returned a guilty verdict but before the issue of the prior conviction was tendered to it, double jeopardy considerations prohibited the impanelling of a new jury to try the issue of the prior conviction.'" (*People* v. *Hockersmith, supra,* 217 Cal.App.3d at pp. 972-974.)

In *People* v. *Dee* (1990) 222 Cal.App.3d 760 [272 Cal.Rptr. 208], the prior allegation was, like the instant case, bifurcated from the substantive offense and the trial court erroneously discharged the jury before proceedings took place on the former. When the court realized its error, it attempted to get the jury back, but defense counsel waived jury trial and the defendant admitted the prior. The appellate court reversed the finding on the prior, holding that double jeopardy principles applied, and his attorney should not have waived jury trial on the prior and permitted him to admit it. (*Id.,* at p. 766.)

We hold in the context of the case before us, in accord with *Hockersmith* and *Dee,* that jeopardy attaches to both the substantive charge and the enhancement once the jury is impaneled, and, if the jury is discharged before a jury waiver is obtained, the defendant may not be found, at any point, to have suffered the prior conviction. Of course, this puts a burden on the trial court to ensure that it immediately obtain a proper waiver from the parties when defendant indicates at some time before trial or during trial that she/he intends to waive the jury on the alleged enhancement. This is particularly burdensome if trial of an enhancement allegation has been bifurcated for trial because there is a tendency for busy trial judges to discharge a jury after they return a verdict of guilty on a charge to which an enhancement applies. Such waiver must be obtained before the jury is discharged. Although the ultimate obligation rests with the trial court, the prosecutor, who, of course, has no interest in seeing an otherwise well-pled enhancement overturned on appeal, has a comparable obligation to remind

and urge the trial judge to accept the timely waiver as soon as it is proposed by the defendant (assuming the People would also waive jury).

The People contend West may not rely on double jeopardy here because he did not do so below. Neither did the defendant in *Dee* and that failure seems not to have been a stumbling block to the court. We could, as did *Dee*, hold that counsel here was incompetent for failing to assert the defense of double jeopardy (or at least preserving it) and for waiving jury trial on the prior; however, in light of the unsettled state of the law on the subject at the time this trial occurred, we are loath to presume counsel should have known better. The finding on the prior must be stricken and the enhancement vacated.

## DISPOSITION

The true finding on the 1984 battery prior is reversed and the one-year enhancement for it is vacated. The trial court is directed to amend the abstract of judgment to delete its reference to the prior and to indicate that West's total determinate term is now two years. In all other respects, the judgment is affirmed.

Timlin, J., and McDaniel, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.