845 P.2d 539 (1992)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of T.T., T.T., J.R., D.R., and C.R., Children,
and Concerning J.R., Respondent-Appellant.
No. 91CA1177.
Colorado Court of Appeals, Div. I.
August 27, 1992.
Rehearing Denied October 15, 1992.
Certiorari Denied February 16, 1993.
Beth Whittier, County Atty., and Judith L. Hufford, Chief Deputy County Atty., Colorado Springs, for petitioner-appellee.
No appearance for guardian ad litem.
Robert L. Shoop, Colorado Springs, for respondent-appellant.
Opinion by Judge PIERCE.
J.R. (mother) appeals from a judgment of the trial court terminating her parent-child legal relationship with her minor children T.T., T.T., J.R., D.R., and C.R. We affirm.
On August 7, 1989, T.T., T.T., J.R., and D.R. were taken into custody by the Department of Social Services (Department) following the death of their sister as a result of physical abuse and malnutrition that occurred while she was in the care of her parents. Because of that death, the parents were arrested and charged with, among other things, first degree murder.
The children were placed with relatives. And, on August 17, 1989, the Department filed a petition in dependency and neglect. This matter trailed related criminal matters.
In the summer of 1990, both parents were found guilty of first degree murder, *540 conspiracy to commit first degree murder, and reckless child abuse. On September 21, 1990, mother was sentenced to life imprisonment plus 32 years. Father was sentenced to life imprisonment plus 96 years. Mother's appeal of her conviction is pending before this court.
Prior to her conviction, mother gave birth to C.R. The department took C.R. into custody and filed a dependency and neglect action as to C.R., which was consolidated with the action pending for the other children.
On April 24, 1991, the Department moved to terminate both parents' parental rights as to all the children. The trial court took judicial notice of the convictions and sentences of both parents and sustained the petitions for dependency and neglect.
On June 6, 1991, the trial court terminated the parent-child relationships between each parent and each child. The trial court found that it was appropriate to take judicial notice of mother's conviction on the three criminal charges and her sentence of life imprisonment plus 32 years. The trial court further found that mother's sentence was in excess of six years, that mother would be confined for more than six years, and that this rendered the Department unable to formulate an appropriate treatment plan which could successfully address the unfitness of mother within a reasonable time.
In addition, the court found that the death of the sibling as a result of abuse by the parents, as proven at trial, rendered the Department unable to formulate an appropriate treatment plan which could successfully address the unfitness of mother within a reasonable time. The court also found that appellate proceedings would be of such extended duration as to delay permanent and stable planning for the children and that such delay would not be in the best interests of the children. Finally, the court found that it would be in the best interests of the children to terminate mother's parental rights to them.
Mother contends that the trial court erred in terminating her parental rights prior to the determination of her appeal of her criminal convictions. We disagree.
Section 19-3-604(1)(b)(III), C.R.S. (1991 Cum.Supp.) provides, in pertinent part:
The court may order a termination of the parent-child legal relationship upon the finding of any one of the following:
. . . .
(b) That the child is adjudicated dependent or neglected and the court has found by clear and convincing evidence that no appropriate treatment plan can be devised to address the unfitness of the parent or parents. In making such a determination, the court shall find one of the following as the basis for unfitness:
. . . .
(III) Long-term confinement of the parent of such duration that he is not eligible for parole for at least six years from the date the child was adjudicated dependent or neglected....
No case has addressed the issue of how to compute the six-year parole eligibility period. Mother argues that the six-year period should not be computed until all appeals as of right from a trial court conviction and sentence have been exhausted. Accordingly, she concludes that until her pending appeal is disposed of, the trial court may not terminate her parental rights under the above statute. We disagree.
In support of her position, mother relies on § 16-12-101, C.R.S. (1986 Repl.Vol. 8A), which grants any convicted criminal defendant "the right of appeal to review the proceedings resulting in conviction." She also relies on People v. Billips, 652 P.2d 1060 (Colo.1982) for the proposition that a criminal claim has not been fully and finally litigated until the highest state court to which an applicant can appeal as of right has ruled on the merits of the claim.
The issue mother raises, for purposes of interpreting § 19-3-604(1)(b)(III), C.R.S. (1991 Cum.Supp.), is whether the term "convicted" means a judgment of conviction *541 in a trial court or whether it means a final determination of conviction after appeal. In different statutory schemes, there are a variety of definitions of the term conviction. Compare §§ 16-3-202, C.R.S. (1986 Repl.Vol. 8A); XX-XX-XXX(1)(a), C.R.S. (1991 Cum.Supp.); XX-XX-XXX.8(8), C.R.S. (1991 Cum.Supp.); XX-XX-XXX.2(2), C.R.S. (1991 Cum.Supp.); 42-2-123(6)(a), C.R.S. (1991 Cum.Supp.); and 42-7-103(3), C.R.S. (1984 Repl.Vol. 17) with §§ 40-2.2-107, C.R.S. (1991 Cum.Supp.) and 43-6-204(5), C.R.S. (1991 Cum.Supp.); see also People v. Enlow, 135 Colo. 249, 310 P.2d 539 (1957). However, for purposes of determining the meaning of conviction here, we must look to the policies of the Children's Code, § 19-1-101, et seq., C.R.S. (1991 Cum.Supp.).
In construing the provisions of the Children's Code, a court is to place paramount emphasis on the best interests of the child. See § 19-3-604(3), C.R.S. (1991 Cum.Supp.) The provisions of the Code are designed to render a particular parent fit to provide adequate parenting to a child within a "reasonable" time. See § 19-3-508(1)(e)(II), C.R.S. (1991 Cum.Supp.).
If we construe § 19-3-604(1)(b)(III) in light of these policies, it is apparent that the General Assembly intended "conviction" to mean convicted upon trial. At that time, an accused has had a complete and full opportunity to be heard on the charges against her and a final judgment against her has been entered. See Crim.P. 32(c); Hellman v. Rhodes, 741 P.2d 1258 (Colo.1987); People v. Campbell, 738 P.2d 1179 (Colo.1987); People v. Salazar, 39 Colo.App. 409, 568 P.2d 101 (1977).
To hold otherwise would be to violate the important policies of the Children's Code which seek to assure a child of some degree of permanency in long-term planning and to assure the child of a stable and secure environment as soon as possible. See § 19-1-102, C.R.S. (1991 Cum.Supp.). If a termination proceeding were required to be stayed until a parent's appellate rights are exhausted, a child would have to spend an indeterminate time, perhaps a great portion of his youth, in foster or other temporary care at a time when the child needs stability and bonding in his relationships. Consequently, we find no error in the trial court's having taken judicial notice of the judgments of conviction and sentence length imposed when terminating mother's parental rights.
Relying on Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) and People in Interest of A.M.D., 648 P.2d 625 (Colo.1982), mother contends that the trial court violated her due process rights by terminating her parental rights prior to the resolution of her criminal convictions and sentences on appeal. She argues that this action infringed on her liberty interests as a parent, which are protected by the Fourteenth Amendment and Colo. Const. art. II, § 25. We reject this argument.
Santosky held that parents must be provided with fundamentally fair procedures in termination procedures and that, accordingly, in such proceedings, the standard of proof had to be by clear and convincing evidence. In People in Interest of A.M.D., supra, our supreme court adopted the Santosky standard.
Our interpretation of § 19-3-604(1)(b)(III) will protect mother's fundamental liberty interest. In order to terminate parental rights pursuant to § 19-3-604(1)(b)(III), a trial court must find that the criteria of that section have been proven by clear and convincing evidence. If the trial court relies on a trial court criminal conviction and sentence, it will be relying on a judgment obtained in a proceeding in which the standard of proof was even more stringent, i.e., beyond a reasonable doubt. Consequently, we rule that mother was provided due process by the trial court's and our interpretations of the term "conviction" as it applies in the context of § 19-3-604(1)(b)(III).
We note and reject mother's arguments, in reliance on People in Interest of A.H., 736 P.2d 425 (Colo.App.1987) and People in Interest of M.C.C., 641 P.2d 306 (Colo.App.1982), that the sole fact of a conviction of a felony does not operate to terminate a parent's rights and that the Department was obligated to prepare a treatment plan even *542 though mother was incarcerated. These cases were decided under a different statutory scheme not applicable here.
Judgment affirmed.
HUME and ROTHENBERG, JJ., concur.